UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDDIE SUSSMAN, SR. ET AL.                                CIVIL ACTION

VERSUS                                                   NO: 15-2373

FINANCIAL GUARDS, LLC ET AL.                             SECTION: "H"(4)

## ORDER AND REASONS

Before the Court is Plaintiff's Motion for Default Judgment (Doc. 33). For the foregoing reasons, the Motion is GRANTED.

## BACKGROUND

Plaintiffs Eddie Sussmann, Sr. and Leading Edge Financial Services LLC ("Leading Edge") brought this action against former employee Daniel Dragan ("Dragan") and his company, Financial Guards, LLC ("Financial Guards"). In their Complaint, Plaintiffs allege that Dragan worked as an independent contractor managing IT and marketing for Leading Edge for many years before he was terminated on May 15, 2015. They allege that shortly after his termination, Dragan formed Defendant Financial Guards. Plaintiffs allege that Defendants then converted Plaintiffs' assets and confidential information and refused to return them. Plaintiffs allege that Defendants used the converted property to create websites and alter existing websites with the intention of confusing customers of Leading Edge and

1

attracting customers to Financial Guards. They also allege that Defendants used the converted property to redirect incoming calls made to Plaintiffs to Financial Guards and to send emails to Plaintiffs' contacts. Plaintiffs bring claims against Defendants under the Computer Fraud and Abuse Act, the Louisiana Uniform Trade Secrets Act, Louisiana Unfair Trade Practices Act, the Lanham Act, and for conversion and injunctive relief.

Plaintiff filed an Amended Complaint on August 21, 2015. The Defendant Financial Guards has not answered nor otherwise made an appearance in this matter. This Court entered default against Financial Guards on February 12, 2016. Plaintiff now seeks the entry of a default judgment against Defendant Financial Guards.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 55(b), a default judgment may be entered against a party who fails to plead or otherwise respond to the complaint within the required time period. Default may be entered against a defendant when the plaintiff shows "by affidavit or otherwise" that the defendant has failed to appear.[1] By virtue of the default, Plaintiff's well-pleaded allegations of fact are deemed admitted.[2] After default is entered, the plaintiff may move for default judgment.[3] The decision to enter default judgment is within the sound discretion of the trial court.[4]

---

[1] Fed. R. Civ. 55(a).
[2] *Nishimatsu Const. Co., Ltd. V. Houston Nat'l. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[3] Fed. R. Civ. 55(b)(2).
[4] *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

## LAW & ANALYSIS

Before entering default judgment, the Fifth Circuit has admonished district courts to examine the basis of jurisdiction "both over the subject matter and the parties."[5] In accordance with this mandate, the Court first examines jurisdiction.

### I. Subject Matter Jurisdiction

Before entering a default judgment, the Court has an affirmative duty to investigate its subject matter jurisdiction.[6] Subject matter jurisdiction in this case is premised upon federal question jurisdiction.[7] Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[8] Here, Plaintiffs bring actions under the laws of the United States, including the Lanham Act and the Computer Fraud and Abuse Act. Accordingly, this Court has federal question jurisdiction over those claims and supplemental jurisdiction over the remaining claims.[9]

### II. Personal Jurisdiction

The Court may also exercise personal jurisdiction over Financial Guards. Jurisdiction over a non-resident defendant is proper when (1) the defendant is amendable to service of process under the long-arm statue of the forum state;

---

[5] *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).
[6] *Id.*
[7] *See* 28 U.S.C. § 1331.
[8] *Id.*
[9] *See* 28 U.S.C. § 1367; *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 466–67 (D.D.C. 2014) ("[T]he instant suit is brought pursuant to the Federal Lanham Act, 15 U.S.C. § 1051 et seq., which is a "law[ ] ... of the United States," over which "[t]he district courts ... have original jurisdiction." 28 U.S.C. § 1331. Therefore, the Court has subject matter jurisdiction over the plaintiff's Lanham Act claims under 28 U.S.C. § 1331, and the plaintiff's state law claims under 28 U.S.C. § 1367(a), since the plaintiff's claims under the common law of the District of Columbia "are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy.").

and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.[10] In the instant case, "these two inquires merge into one because Louisiana's long-arm statue permits service of process coterminous with the scope of the due process clause."[11]

"The Due Process Clause of the Fourteenth Amendment protects a corporation, as it does an individual, against being made subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'"[12] A court may exercise personal jurisdiction over a non-resident defendant when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."[13]

A defendant's contacts with the forum state are sufficient to establish specific jurisdiction when the defendant has purposely directed its activities toward the forum state and the controversy arises out of or is related to those activities.[14] In *Calder v. Jones*, the Supreme Court held that a California district court had personal jurisdiction over defendants "because of their intentional conduct in Florida calculated to cause injury to respondent in California."[15] Under *Calder*, an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction

---

[10] *Dalton v. R & W Marine, Inc.* 897 F.2d 1359, 1361 (5th Cir. 1990).
[11] *Asarco, Inc. v. Glenara*, Ltd., 912 F.2d 784, 786 (5th Cir. 1990); *see also* La. Rev. Stat. § 13:3201.
[12] *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).
[13] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe*, 326 U.S. at 316).
[14] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).
[15] *Calder v. Jones*, 465 U.S. 783, 791 (1984).

in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.[16] This analysis is known as the "effects test."[17]

Plaintiffs alleges that the Defendant illegally accessed both Plaintiffs' phone lines in Louisiana to redirect incoming calls and their email marketing service to send emails to Plaintiffs' customers. Financial Guards did so with the intent to harm Plaintiffs, who are Louisiana citizens, and redirect business to itself. Plaintiffs also allege that Financial Guards holds confidential, proprietary, and trade secret information, including customer lists and contact information belonging to Plaintiffs, and refuses to return it to Plaintiffs in Louisiana. This Court holds that these intentional acts are sufficient to create minimum contacts with this state. Because Plaintiffs' claims arise out of those contacts, this Court has specific jurisdiction over Financial Guards.

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." The fairness inquiry is determined by analyzing several factors: (1) the burden upon the nonresident defendant of litigating in the forum state; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.[18]

This Court finds that litigating this matter in Louisiana will not impose any undue burden on Financial Guards, especially in light of Dragan's former employment with Leading Edge, a Louisiana company. In addition, the State of Louisiana has a substantial interest in litigating matters involving tortious

---

[16] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009).
[17] *See id.*
[18] *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (internal citations omitted).

acts directed at its citizens.[19] Accordingly, this Court holds that the exercise of specific jurisdiction over Defendant Financial Guards is reasonable.

   **III. Claims**

In entering default judgment, the Court is mindful that such judgments are "generally disfavored in the law and thus should not be granted on the claim, without more, that the defendant has failed to meet a procedural time requirement."[20] "A defendant's default does not in itself warrant the court in entering a default judgment" as "[t]here must be a sufficient basis in the pleadings for the judgment entered."[21] "The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law."[22] "A default judgment is unassailable on the merits . . . only so far as it is supported by well-pleaded allegations, assumed to be true."[23] Accordingly, the reviewing court must "ensure that the unchallenged facts constitute a legitimate cause of action."[24] A "judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."[25] Accordingly, in order to grant damages, the amount must be certain.

In this case, the Plaintiffs have brought claims under the Computer Fraud and Abuse Act and the Lanham Act for trade dress infringement and unfair competition. The Plaintiffs have also brought state law claims under the Louisiana Uniform Trade Secrets Act and the Louisiana Unfair Trade

---

[19] *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 631 (5th Cir. 1999) ("The State of Louisiana has a substantial interest in the litigation of these claims against foreign defendants who allegedly committed intentional and tortious acts directed at Louisiana . . .").
[20] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (internal quotations omitted).
[21] *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[22] *Id.* (emphasis in original).
[23] *Id.* (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1884)).
[24] *Farrell v. Landrieu*, No. 14-0072, 2016 WL 1714227, at *2 (E.D. La. Apr. 1, 2016).
[25] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Practices Act, as well as a claim for the state law tort of conversion. The Court will address each of these claims in turn.

### A. The Computer Fraud and Abuse Act (CFAA)

"An individual may bring a civil cause of action for damages or loss arising from CFAA violations under 18 U.S.C. § 1030 (g)."[26] Section 1030(g) states that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."[27] Those factors are:

> (I) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value; (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety; (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.[28]

Plaintiffs' Complaint alleges that Financial Guards violated the Computer Fraud and Abuse Act by gaining unauthorized access to Plaintiffs' internal computer network, email, and telephone systems and using and disclosing the confidential and proprietary information therein for personal gain. Plaintiffs further allege that Financial Guards used and continues to use the information taken from Plaintiffs for its own personal gain despite repeated demands for the return of Plaintiffs' information. Plaintiffs contend

---

[26] *Oil States Skagit Smatco, LLC v. Dupre*, No. 09-4508, 2010 WL 2605748, at *2 (E.D. La. June 21, 2010).
[27] 18 U.S.C. § 1030 (West).
[28] *Id.*

that as a result of these actions, they have incurred damages of not less than $5,000, satisfying factor (I) subsection (c)(4)(A)(i). Accordingly, assuming the facts of the Complaint to be true, Plaintiffs have pleaded sufficient facts to warrant a default judgment on their claim under the CFAA.

**B. The Lanham Act**

Plaintiffs next allege that Defendant has committed trade dress infringement pursuant to 15 U.S.C. § 1117 of the Lanham Act. "'Trade dress' refers to the image and overall appearance of a product. The Lanham Act prohibits a party from passing off its goods or services as those of a competitor by employing a substantially similar trade dress which is likely to confuse consumers as to the source of the product."[29]

> A court must undertake a two-step analysis to resolve a trade dress infringement claim under the Lanham Act. The first question is whether the product's trade dress qualifies for protection. This inquiry encompasses three issues: (1) distinctiveness, (2) secondary meaning, and (3) functionality. Second, if the trade dress is protected, the court must then determine whether the trade dress has been infringed. Infringement occurs only when there is a likelihood of confusion between the products of the plaintiff and the defendant.[30]

"The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires secondary meaning . . . is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods."[31]  "[T]rade dress protection extends only to incidental, arbitrary or ornamental product features which identify the source of the

---

[29] *Allied Marketing Group, Inc. v. CDL Marketing Inc.,* 878 F.2d 806, 812 (5th Cir. 1989) (internal citations omitted).
[30] *Blue Bell Bio-Med. v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989).
[31] *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001).

8

product."[32] "[T]he primary test for determining whether a product feature is functional is whether the feature is essential to the use or purpose of the product or whether its affects the cost or quality of the product."[33]

Plaintiffs allege that Financial Guards willfully copied the visual appearance of their websites, including the color, layout, and design elements. Plaintiffs allege that their website, dicenter.com, was copied by Defendant in the creation of lifeguy.com. Plaintiffs further allege that their website difordocs.com was copied by Defendant's competing website physiciansprotection.com. Plaintiffs have alleged that the color and design of their websites "is recognized by consumers and has become the indicator of the source and origin of the products Plaintiffs provide." Plaintiffs allege that the websites created and utilized by Defendant have caused confusion and misled their consumers.

Accepting these allegations as true, this Court holds that the design aspects of Plaintiffs' websites qualify for trade dress protection and that Defendant has infringed that trade dress. The design of Plaintiffs' websites is not a functional aspect of their products but has developed a distinctiveness that allows consumers to recognize those products. Defendant's adoption of a similar design created a likelihood of confusion. Indeed, Plaintiffs allege that customers contacted them to inquire whether the competing websites were affiliated. Accordingly, Plaintiffs have adequately plead facts that, if accepted as true, support a default judgment under the Lanham Act.

**C. LUTPA**

Plaintiff's Complaint next alleges violations of the Louisiana Unfair Trade Practices Act ("LUTPA"). LUTPA prohibits unfair or deceptive acts or

---

[32] *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002).
[33] *Id.* at 356 (quoting *Traffix Devices, Inc.*, 532 U.S. at 32-33).

practices in the conduct of any trade or commerce.[34] "[I]n order to state a claim for a violation of LUTPA, plaintiff must allege: (1) it has suffered an ascertainable loss of money or moveable property; and (2) the loss must be "a result of the use or employment by another person of an unfair or deceptive method, act, or practice."[35] "A trade practice is deemed unfair 'when it offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" or business competitors.[36] "When evaluating a claim of unfair competition under LUTPA, where the alleged unfair act is trade dress infringement, a court is to apply the likelihood of confusion standard used for the Lanham Act."[37]

Plaintiffs have alleged that Defendant engaged in unlawful, unfair, and fraudulent acts as discussed above. This Court has already held that those allegations satisfy the Lanham Act's likelihood of confusion standard. Accordingly, Plaintiffs are also entitled to default judgment on their LUTPA claim.

### D. LUTSA

Plaintiffs next allege that they are entitled to protection under the Louisiana Uniform Trade Secrets Act (LUTSA) because Financial Guards benefitted from access to their confidential, proprietary, and/or trade secret information. "To succeed on a LUTSA claim for damages from a misappropriation, a claimant must prove (1) the existence of a trade secret; (2) a misappropriation of the trade secret by another; and (3) the actual loss

---

[34] La. Rev. Stat. § 51:1405.
[35] *Total Rebuild Inc v. Streamline Hose & Fittings Inc*, No. 6:15CV1172, 2015 WL 9237112, at *3 (W.D. La. Dec. 16, 2015).
[36] *Landreneau v. Fleet Fin. Grp.*, 197 F. Supp. 2d 551, 557 (M.D. La. 2002).
[37] *Total Rebuild Inc v. Streamline Hose & Fittings Inc*, No. 6:15CV1172, 2015 WL 9237112, at *3 (W.D. La. Dec. 16, 2015).

caused by the misappropriation."[38] "Under LUTSA, a trade secret is defined as 'information, including a formula, pattern, compilation, program, device, method, technique, or process'" which "'derives independent economic value, actual or potential, from not being generally known, . . . and is the subject of efforts . . . to maintain its secrecy.'"[39] "Whether or not something constitutes a trade secret is a question of fact."[40]

Plaintiffs allege that Defendant converted for its benefit their proprietary information, such as: (1) client names, (2) financial information, (3) compensation plans, and (4) customer contacts. "A customer list or special pricing list may be a trade secret if efforts are made to maintain its secrecy."[41] The Complaint indicates that Plaintiffs made efforts to keep this information secret by requiring in its Independent Contractor Agreement that Dragan protect its confidential information, intellectual property, and trade secrets. Accordingly, Plaintiffs are entitled to a default judgment on their LUTSA claim.

**E. Conversion**

Finally, Plaintiffs have brought the state law tort claim of conversion against Defendant, asserting that Defendant obtained and withheld their confidential information without authorization. "Conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights. The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's

---

[38] *First American Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No.15-638, 2016 WL 1437165, at *3 (citing *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)).
[39] *Id.* (quoting La. Rev. Stat. § 51:1431(4)).
[40] *Corrosion Specialties and Supply, Inc. v. Dicharry*, 631 So. 2d 1389, 1391 (La. App. 5 Cir. 1994).
[41] *Pontchartrain Med. Labs, Inc. v. Roche Biomedical Laboratories, Inc.*, 677 So. 2d 1086, 1090 (La. App. 1 Cir. 1996).

rights."[42] To succeed on a conversion claim, Plaintiffs must prove (1) they owned the confidential information allegedly withheld by Defendant; "(2) the possession by Defendant was inconsistent with Plaintiff's rights of ownership; and (3) the possession constituted a wrongful withholding of the information and data."[43]

Plaintiffs' Complaint alleges that as an independent contractor of Leading Edge, Dragan had access to their confidential information, including customer lists and contact information. They allege that he used this access to unlawfully convert this information and has refused to return it. Dragan has used this information in conjunction with Defendant Financial Guards. Accordingly, Plaintiff's Complaint supports a default judgment against Financial Guards for conversion.

**F. Damages and Injunctive Relief**

Having found that Plaintiffs are entitled to judgment on all of the claims brought against Financial Guards and specifically holding that default does not appear to have occurred by mistake or excusable neglect, the Court must now determine the damages owed. Plaintiffs have requested both injunctive relief and damages.

"'[T]he scope of injunctive relief is dictated by the extent of the violation established,' and an injunction must be narrowly tailored to remedy the specific action necessitating the injunction."[44] "A permanent injunction is appropriate if a plaintiff can prove: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not

---

[42] *Aymond v. State, Dep't of Revenue & Taxation*, 672 So. 2d 273, 275 (La. App. 1 Cir. 1996) (internal citations omitted).
[43] *First Am. Bankcard, Inc.,* 2016 WL 1437165, at *10.
[44] *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 833 (E.D. La. 2012).

12

disserve the public interest."[45] Under 15 U.S.C. § 1116(a), this Court can grant a permanent injunction for a violation of the Lanham Act.

Plaintiffs have requested that this Court enjoin Financial Guards from utilizing Plaintiffs' trade secrets or confidential information and require them to return such property. They have also requested that Financial Guards be enjoined from continuing to display the infringing websites and from continuing to infringe on Plaintiff's trade dress.

The Court finds that Plaintiffs are entitled to a permanent injunction as requested. "Defendant's default constitutes actual success on the merits."[46] In addition, monetary damages will be insufficient to prevent Defendant from continuing to engage in infringing activity. If Defendant is allowed to continue infringing on Plaintiffs' trade dress and utilizing Plaintiffs' confidential information, Plaintiffs will suffer great harm. The harm felt by Defendants in ceasing this activity is minimal in comparison. "Finally, an injunction would serve the public interest by promoting compliance with intellectual property law."[47] Accordingly, Plaintiffs are entitled to a permanent injunction upon the entry of default judgment.

Plaintiffs have also requested damages in the form of lost sales and other monetary damages cause by Defendants acts. Plaintiffs have not, however, specified an exact amount of damages. "The case law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."[48] Accordingly, a hearing shall be held, on the motion of Plaintiffs, to determine damages.

---

[45] *Chevron Intellectual Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009).
[46] *Id.*
[47] *Id.*
[48] *United Artists Corp.*, 605 F.2d at 857.

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED.

Accordingly;

IT IS ORDERED that:

1. Financial Guards, LLC is hereby enjoined from utilizing Plaintiffs' trade secrets or other confidential and proprietary information; enjoined from accessing Plaintiffs' website platforms, email systems, and telephone systems; ordered to return any and all trade secrets, property, and information belonging to Plaintiffs in their possession, custody, or control, including all login credentials and passwords to any database, web portal, or web domain belonging to Plaintiffs; and ordered to delete and destroy any and all copies of confidential and proprietary information belonging to Plaintiffs, including, but not limited to, files maintained on any computer, drive, or e-mail account in their possession or to which they have access or over which they have control, whether in hard copy or in electronic format;

2. Financial Guards, LLC, together with its officers, directors, agents, partners, employees and related companies, and all persons acting in concert with them, are enjoined from copying, reproducing, distributing, advertising, promoting, or displaying the infringing website and content described in the Complaint and First Amended Complaint;

3. Financial Guards, LLC, together with its officers, directors, agents, partners, employees and related companies, and all persons acting in concert with them, are ordered to destroy all materials or articles infringing Leading Edge Financial's trade dress;

IT IS FURTHER ORDERED that Plaintiffs shall move for a hearing on damages.

New Orleans, Louisiana this 21st day of July, 2016

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**