UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDDIE SUSSMAN, SR. ET AL.                    CIVIL ACTION

VERSUS                                       NO: 15-2373

FINANCIAL GUARDS, LLC ET AL.                 SECTION: "H"(4)

**ORDER AND REASONS**

Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. 55). For the following reasons, the Motion is GRANTED IN PART.

**BACKGROUND**

Plaintiffs Eddie Sussmann, Sr. and Leading Edge Financial Services, LLC ("Leading Edge") bring this action against former employee Daniel Dragan ("Dragan") and his company, Financial Guards, LLC ("Financial Guards"). In their Complaint, Plaintiffs allege that Dragan worked as an independent contractor managing IT and marketing for Leading Edge for many years before he was terminated on May 15, 2015. They allege that shortly after his termination, Dragan formed Defendant Financial Guards. Plaintiffs allege that Defendants then converted Plaintiffs' assets and confidential information and refused to return them. Plaintiffs allege that Defendants accessed and manipulated Plaintiffs' websites, email, and telephone system with the intention of confusing customers of Leading Edge

1

and attracting customers to Financial Guards. Plaintiffs bring claims for damages and injunctive relief against Defendants under the Computer Fraud and Abuse Act (CFAA), the Lanham Act, the Louisiana Uniform Trade Secrets Act (LUTSA), Louisiana Unfair Trade Practices Act (LUPTA), and for state law conversion.

After Defendant Financial Guards failed to make an appearance in this matter, this Court entered a default judgment against it on each of Plaintiffs' claims. The default judgment enjoined Financial Guards as follows:

1. Financial Guards, LLC is hereby enjoined from utilizing Plaintiffs' trade secrets or other confidential and proprietary information; enjoined from accessing Plaintiffs' website platforms, email systems, and telephone systems; ordered to return any and all trade secrets, property, and information belonging to Plaintiffs in their possession, custody, or control, including all login credentials and passwords to any database, web portal, or web domain belonging to Plaintiffs; and ordered to delete and destroy any and all copies of confidential and proprietary information belonging to Plaintiffs, including, but not limited to, files maintained on any computer, drive, or e-mail account in their possession or to which they have access or over which they have control, whether in hard copy or in electronic format;
2. Financial Guards, LLC, together with its officers, directors, agents, partners, employees and related companies, and all persons acting in concert with them, are enjoined from copying, reproducing, distributing, advertising, promoting, or displaying the infringing website and content described in the Complaint and First Amended Complaint;
3. Financial Guards, LLC, together with its officers, directors, agents, partners, employees and related companies, and all persons acting in concert with them, are ordered to destroy all materials or articles infringing Leading Edge Financial's trade dress.

The Court also ordered that Plaintiffs move for a hearing on damages.

Having obtained a default against Financial Guards, Plaintiffs now

move for summary judgment against Dragan.[1] They argue that the undisputed material facts establish that Dragan has converted their confidential information, as well as violated the CFAA, the Lahnam Act, LUTSA, and LUPTA. Plaintiffs seek permanent injunctive relief, as well as damages, against Dragan.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is

---

[1] Plaintiffs argue in part that this Court should "impute its findings of liability against Financial Guards to Daniel Dragan" or that its "factual findings" against Financial Guards support a grant of summary judgment here. In granting a default judgment, however, a court must deem all well-pleaded facts admitted and must merely "ensure that the unchallenged facts constitute a legitimate cause of action." Farrell v. Landrieu, No. 14-0072, 2016 WL 1714227, at *2 (E.D. La. Apr. 1, 2016). Here, Dragan has the opportunity to respond and challenge those "well-pleaded facts" in an effort to create a material issue of fact preventing the grant of summary judgment. In addition, Plaintiffs carry the burden of proving the facts of their claim. Accordingly, the default judgment against Financial Guards has no bearing on the Motion for Summary Judgment against Dragan.
[2] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW & ANALYSIS

Before addressing each of Plaintiffs' claims, this Court takes note of Defendant Dragan's *pro se* status. It is well-settled that *pro se* briefs are afforded a liberal construction.[10] Even so, *pro se* litigants "must still comply with the rules of procedure and make arguments capable of withstanding summary judgment."[11] Plaintiffs point out that Defendant has failed to respond to their requests for admission or their statement of uncontested facts. Failure to respond to either ordinarily renders those facts admitted.[12] The

---

[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[10] Steward v. Bryan, No. 02-61059, 2003 WL 22295510, at *1 (5th Cir. Oct. 7, 2003).
[11] Ogbodiegwu v. Wackenhut Corr. Corp., 202 F.3d 265 (5th Cir. 1999).
[12] Under Federal Rule of Civil Procedure 36, requests for admissions are deemed admitted if not answered within 30 days. Fed. R. Civ. Pro. 36. "Further, if the requests for admissions concern an essential issue, the failure to respond to requests for admission can lead to a grant of summary judgment against the non-responding party." Murrell v. Casterline, 307 F. App'x 778, 780 (5th Cir. 2008). In addition, all material facts in a movant's

Court notes, however, that Plaintiffs have not provided any competent evidence showing that Defendant failed to respond to their requests for admission.

Even so, Defendant's untimely opposition to Plaintiffs' Motion also did not include any competent evidence. "Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence."[13] Notwithstanding these technical failures, however, Defendant also has not identified any material issues of fact necessary to defeat Plaintiffs' Motion for Summary Judgment as outlined below.

### A. The Computer Fraud and Abuse Act (CFAA)

First, Plaintiffs bring an action for violation of the CFAA. "An individual may bring a civil cause of action for damages or loss arising from CFAA violations under 18 U.S.C. § 1030(g)."[14] Section 1030(g) states that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."[15] A civil action for a violation of this section may be brought if it involves loss to one or more persons during any one-year period of at least $5,000 in value.[16] A claim brought pursuant to 18 U.S.C. § 1030(a)(4) requires the plaintiff to prove the following elements: "(1) defendant has accessed a protected computer; (2) has done so without

---

statement of uncontested material facts will be deemed admitted unless controverted in the opponent's statement of contested material facts. LR 56.2.

[13] Illinois Union Ins. Co. v. Louisiana Health Serv. & Indem. Co., No. 16-6604, 2017 WL 2541577, at *14 (E.D. La. June 12, 2017); *see* Essell v. Purdy, 112 F. App'x 326, 327 (5th Cir. 2004).

[14] Oil States Skagit Smatco, LLC v. Dupre, No. 09-4508, 2010 WL 2605748, at *2 (E.D. La. June 21, 2010).

[15] 18 U.S.C. § 1030.

[16] *Id.*

authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value."[17]

Plaintiffs allege that Dragan violated the CFAA by (1) accessing Plaintiffs' computer network, internet, email, and telephone systems subsequent to his termination, (2) without authorization from Plaintiffs, and (3) for the purpose of stealing Plaintiffs' confidential information for his own personal gain. In his declaration, Plaintiff Sussman states that when Dragan returned his Leading Edge computers after his termination, they had been wiped and two were restored with outdated data. Sussman claims that Dragan then refused to return Leading Edge's customer contact information. Data recovery software was unable to retrieve any of the missing information.

In addition, Sussmann states that Dragan accessed Leading Edge's internet-based telephone system after his termination and redirected incoming calls to Financial Guards. Sussmann's technical consultant, Sheila Keller, confirmed in a declaration that Dragan had accessed Leading Edge's telephone system after he was terminated.

Sussmann also states that Dragan accessed Leading Edge's email marketing service after his termination and used it to email Leading Edge's customers with promotional materials directing them to contact Dragan. Plaintiffs have attached a copy of the email, which appears to advertise Leading Edge's insurance products but includes contact information and website links to Financial Guards. Keller confirmed that Dragan had accessed Leading Edge's email marketing service using its credentials after his termination.

---

[17] Associated Pump & Supply Co., LLC v. Dupre, No. 14-9, 2014 WL 1330196, at *5 (E.D. La. Apr. 3, 2014); see Fiber Sys. Int'l, Inc. v. Roehrs, 470 F.3d 1150, 1156 (5th Cir. 2006).

Keller further testified that a forensic analysis of Leading Edge's websites revealed that after Dragan was terminated he manipulated certain hyperlinks to redirect to his own website

In response, Dragan disputes the date of his termination. While Plaintiffs allege he was terminated on May 15, 2015, Dragan contends that he resigned on May 19, 2015. He admits though that the computers at issue were not returned until after his resignation. He does not submit any evidence disputing Plaintiffs' claims that the computers had been wiped and that he refused to return Plaintiffs' customer lists. Dragan likewise does not provide any evidence—competent or otherwise—tending to show that he did not access Plaintiffs' phone lines, website, or email service after his termination to redirect business to Finanacial Guards. Accordingly, Defendant had not created a material issue of fact as to Plaintiffs' CFAA claim, and summary judgment is therefore granted.

**B. The Lanham Act**

Plaintiffs next allege that Defendant committed trade dress infringement pursuant to 15 U.S.C. § 1117 of the Lanham Act. "'Trade dress' refers to the image and overall appearance of a product. The Lanham Act prohibits a party from passing off its goods or services as those of a competitor by employing a substantially similar trade dress which is likely to confuse consumers as to the source of the product."[18]

> A court must undertake a two-step analysis to resolve a trade dress infringement claim under the Lanham Act. The first question is whether the product's trade dress qualifies for protection. This inquiry encompasses three issues: (1) distinctiveness, (2) secondary meaning, and (3) functionality. Second, if the trade dress is protected, the court must then determine whether the trade dress has been infringed. Infringement occurs only when

---

[18] Allied Mktg. Grp., Inc. v. CDL Mktg. Inc., 878 F.2d 806, 812 (5th Cir. 1989) (internal citations omitted).

7

there is a likelihood of confusion between the products of the plaintiff and the defendant.[19]

"The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires secondary meaning . . . is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods."[20] "[T]rade dress protection extends only to incidental, arbitrary or ornamental product features which identify the source of the product."[21] "[T]he primary test for determining whether a product feature is functional is whether the feature is essential to the use or purpose of the product or whether it affects the cost or quality of the product."[22]

Plaintiffs allege that Dragan willfully copied the visual appearance of their websites, including the color, layout, and design elements. Plaintiffs allege Defendant copied their website, dicenter.com, when he created his competing website, lifeguy.com. Plaintiffs further allege that Defendant's competing website physiciansprotection.com copied their website difordocs.com. Plaintiffs argue that the color and design of their websites "is recognized by consumers and has become the indicator of the source and origin of the products Plaintiffs provide." Plaintiffs allege that the websites created and utilized by Defendant have caused confusion and misled their consumers.

Plaintiffs have not, however, provided this Court with any evidence to assess their trade dress claim. Plaintiffs have failed to provide any evidence showing that their website design has acquired a distinctiveness or secondary meaning. Indeed, Plaintiffs do not even describe the overall appearance of the

---

[19] Blue Bell Bio-Med. v. Cin-Bad, Inc., 864 F.2d 1253, 1256 (5th Cir. 1989).
[20] Traffix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 28 (2001).
[21] Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH, 289 F.3d 351, 355 (5th Cir. 2002).
[22] *Id.* at 356 (quoting *Traffix Devices, Inc.*, 532 U.S. at 32–33).

websites they seek to protect. "When alleging a trade dress claim, the plaintiff must identify the discrete elements of the trade dress that it wishes to protect."[23] In addition, this Court cannot without seeing the websites at issue determine whether Defendant's sites copied Plaintiffs' sites such that they might cause confusion. Sussman's self-serving declaration that Defendant's websites copied Leading Edge's websites and caused confusion is insufficient to prove this claim on summary judgment. Accordingly, Plaintiffs' request for summary judgment on their Lanham Act claim against Dragan is denied.

### C. LUTPA

Plaintiffs next allege violations of the Louisiana Unfair Trade Practices Act ("LUTPA"). LUTPA prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.[24] "[I]n order to state a claim for a violation of LUTPA, plaintiff must allege: (1) it has suffered an ascertainable loss of money or movable property; and (2) the loss must be a result of the use or employment by another person of an unfair or deceptive method, act, or practice."[25] "A trade practice is deemed unfair when it offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" or business competitors.[26]

Plaintiffs allege that Defendant's acts in using their email service to send an email to Plaintiffs' customers directing them to call Defendant, redirecting Plaintiffs' website to Defendant's website, and manipulating Plaintiffs' telephone system all constitute unfair or deceptive trade practices. This Court agrees. These acts, which Defendant has failed to dispute, certainly rise to the

---

[23] Test Masters Educ. Servs., Inc. v. State Farm Lloyds, 791 F.3d 561, 565 (5th Cir. 2015).
[24] La. Rev. Stat. § 51:1405.
[25] Total Rebuild Inc v. Streamline Hose & Fittings Inc, No. 6:15-1172, 2015 WL 9237112, at *3 (W.D. La. Dec. 16, 2015).
[26] Landreneau v. Fleet Fin. Grp., 197 F. Supp. 2d 551, 557 (M.D. La. 2002).

level of "fraud, misrepresentation, deception or other unethical conduct" required by LUTPA and likely caused damages to be proven at trial.[27] Accordingly, Plaintiffs are entitled to summary judgment on their LUTPA claim against Dragan.

**D. LUTSA**

Plaintiffs next allege that they are entitled to protection under the Louisiana Uniform Trade Secrets Act (LUTSA) because Dragan benefitted from access to their confidential, proprietary, and/or trade secret information. "To succeed on a LUTSA claim for damages from a misappropriation, a claimant must prove (1) the existence of a trade secret; (2) a misappropriation of the trade secret by another; and (3) the actual loss caused by the misappropriation."[28]  "Under LUTSA, a trade secret is defined as 'information, including a formula, pattern, compilation, program, device, method, technique, or process'" which "'derives independent economic value, actual or potential, from not being generally known, . . . and is the subject of efforts . . . to maintain its secrecy.'"[29] "Whether or not something constitutes a trade secret is a question of fact."[30]

Plaintiffs allege that Defendant converted for his benefit their proprietary information, such as: (1) client names, (2) financial information, (3) compensation plans, and (4) customer contacts. "A customer list or special pricing list may be a trade secret if efforts are made to maintain its secrecy."[31]

---

[27] SnoWizard, Inc. v. Robinson, 897 F. Supp. 2d 472, 486 (E.D. La. 2012) ("Only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned by LUTPA.").
[28] First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc., No.15-638, 2016 WL 1437165, at *3 (citing Reingold v. Swiftships, Inc., 126 F.3d 645, 648 (5th Cir. 1997)).
[29] *Id.* (quoting La. Rev. Stat. § 51:1431(4)).
[30] Corrosion Specialties and Supply, Inc. v. Dicharry, 631 So. 2d 1389, 1391 (La. App. 5 Cir. 1994).
[31] Pontchartrain Med. Labs, Inc. v. Roche Biomedical Labs., Inc., 677 So. 2d 1086, 1090 (La. App. 1 Cir. 1996).

Sussmann testified that part of the Independent Contractor Agreement between Leading Edge and Dragan required Dragan to protect Leading Edge's confidential information, intellectual property, and trade secrets. Accordingly, Plaintiffs have shown that they made an effort to protect this information, that Defendant had access to this information, and that Defendant took this information and refused to return it. Plaintiffs shall show actual loss at trial. Dragan has not submitted any evidence—competent or otherwise—calling into question this claim. Plaintiffs are therefore entitled to summary judgment on their LUTSA claim against Dragan.

### E. Conversion

Finally, Plaintiffs have brought the state law tort claim of conversion against Defendant, asserting that Defendant obtained and withheld their confidential information without authorization. "Conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights. The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights."[32] To succeed on a conversion claim, Plaintiffs must prove (1) they owned the confidential information allegedly withheld by Defendant; "(2) the possession by Defendant was inconsistent with Plaintiff's rights of ownership; and (3) the possession constituted a wrongful withholding of the information and data."[33]

As discussed above, Plaintiffs show that Dragan had access to their confidential information, including customer lists and contact information, that he used this access to convert this information, and that has refused to return it. Dragan has not offered any evidence or argument showing that he

---

[32] Aymond v. State, Dep't of Revenue & Taxation, 672 So. 2d 273, 275 (La. App. 1 Cir. 1996) (internal citations omitted).

[33] *First Am. Bankcard, Inc.,* 2016 WL 1437165, at *10.

did not take Plaintiffs' customer lists and refuse to return them. Accordingly, Plaintiffs are entitled to summary judgment on their conversion claim.

### F. Damages and Injunctive Relief

Plaintiffs have requested both injunctive relief and damages on their claims against Dragan. "A permanent injunction is appropriate if a plaintiff can prove: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest."[34] Plaintiffs have requested that this Court enjoin Dragan from utilizing Plaintiffs' trade secrets or confidential information. Because Plaintiffs did not prove their claim for trade dress infringement, they are not entitled to an injunction regarding such. The Court finds that Plaintiffs are, however, entitled to a permanent injunction consistent with this opinion. Monetary damages will be insufficient to prevent Defendant from continuing to engage in infringing activity. If Defendant is allowed to continue utilizing Plaintiffs' confidential information, Plaintiffs will suffer great harm. The harm felt by Defendant in ceasing this activity is minimal in comparison. "Finally, an injunction would serve the public interest by promoting compliance with intellectual property law."[35]

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED IN PART. Plaintiffs are entitled to judgment on their claims against Defendant Daniel Dragan for violation of the CFAA, LUTSA, LUTPA, and state law conversion. Plaintiffs shall within 10 days of this Order submit a proposed order of permanent

---

[34] Chevron Intellectual Prop., L.L.C. v. Allen, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009).

[35] *Id.*

injunction consistent with this Order. Plaintiffs' claim for trade dress infringement, as well as damages on its claims against Dragan and Financial Guards, shall be heard at the trial set for January 16, 2018.

    New Orleans, Louisiana this 30th day of October, 2017

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**