UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDDIE SUSSMANN, SR. ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-2373** |
| **FINANCIAL GUARDS, LLC ET AL.** | **SECTION: "H"(4)** |

## ORDER AND REASONS

Before the Court is Defendant Daniel Dragan's Motion to Dismiss pursuant to the Clean Hands Doctrine (Doc. 134), Motion for Reconsideration of this Court's Summary Judgment Order (Doc. 146), and Motion to Vacate Judgment (Doc. 159). For the following reasons, the Motion to Dismiss is DENIED, and the Motions for Reconsideration and to Vacate Judgment are GRANTED IN PART.

## BACKGROUND

Plaintiffs Eddie Sussmann, Sr. and Leading Edge Financial Services, LLC ("Leading Edge") bring this action against former employee Daniel Dragan ("Dragan") and his company, Financial Guards, LLC ("Financial Guards"). In their Complaint, Plaintiffs allege that Dragan worked as an

1

independent contractor managing IT and marketing for Leading Edge for many years before he was terminated on May 15, 2015. They allege that shortly after his termination, Dragan formed Defendant Financial Guards. Plaintiffs allege that Defendants then converted Plaintiffs' assets and confidential information and refused to return them. Plaintiffs allege that Defendants accessed and manipulated Plaintiffs' websites, email, and telephone system with the intention of confusing customers of Leading Edge and attracting customers to Financial Guards. Plaintiffs bring claims for damages and injunctive relief against Defendants under the Computer Fraud and Abuse Act (CFAA), the Lanham Act, the Louisiana Uniform Trade Secrets Act (LUTSA), Louisiana Unfair Trade Practices Act (LUPTA), and for state law conversion.

After Defendant Financial Guards failed to make an appearance in this matter, this Court entered a default judgment against it on each of Plaintiffs' claims.[1] The default judgment enjoined Financial Guards from utilizing Plaintiff's confidential information or displaying the infringing content and ordered it to return or destroy any and all information belonging to Plaintiffs.

Having obtained a default against Financial Guards, Plaintiffs then moved for summary judgment against Dragan. The Court found that Plaintiffs were entitled to judgment on their claims against Defendant Dragan for violation of the CFAA, LUTSA, LUTPA, and state law conversion.[2] The Court thereafter entered injunctive relief on those claims.[3] Only Plaintiffs' claim for

---

[1] Doc. 34.
[2] Doc. 127.
[3] Doc. 157.

trade dress infringement, as well as damages on its claims against Dragan and Financial Guards, are left for trial. In addition, Dragan's counterclaims against Plaintiffs for unpaid wages and other costs also remain to be tried.

Defendant Dragan now moves to dismiss Plaintiffs' claims based on the unclean hands doctrine. In addition, Defendant asks this Court to reconsider its grant of summary judgment and vacate its prior judgment.

## **LEGAL STANDARD**

### I. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[4] A claim is "plausible on its face" when the pleaded facts allow the court to "draw reasonable inference that the defendant is liable for the misconduct alleged."[5] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[6] The court need not, however, accept as true legal conclusions couched as factual allegations.[7] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[8] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[9] The court's review is limited to the

---

[4] Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[5] *Id.*
[6] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[7] *Iqbal*, 556 U.S. at 678.
[8] *Id.*
[9] *Lormand*, 565 F.3d at 255–57.

complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[10]

## II. Motion for Reconsideration

A Motion for Reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b), which states that: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[11] "'[T]he power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is not cabined by the heightened standards for reconsideration' governing final orders.'"[12]

## LAW AND ANALYSIS

### A. Defendant's Motion to Dismiss

Defendant Dragan moves for dismissal of Plaintiffs' remaining claims pursuant to the unclean hands doctrine. Specifically, Defendant contends that Sussmann has made false statements to this Court and "constantly lied in his

---

[10] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[11] Austin v. Kroger Tex., L.P., No. 16-10502, 2017 WL 1379453, at *9 (5th Cir. 2017) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990)).
[12] *Id.* (quoting Saint Annes Dev. Co. v. Trabich, 443 Fed. App'x. 829, 831–32 (4th Cir. 2011).

4

declarations" used to support prior motions. In making this argument, Defendant identifies statements made by Sussmann that he believes to be false.

At the outset, the Court notes that Defendant's Motion is procedurally improper. Defendant's Motion was filed after the deadline for non-evidentiary motions established by this Court, and at 69 pages plus a 22-page supplement, it far exceeds the 25-page limit established by local rules. In addition, none of the documents identified by Defendant have been properly submitted as competent, authenticated evidence. Ignoring these procedural defects in light of Defendant's pro se status, however, Defendant still fails to establish grounds for dismissal of Plaintiffs' remaining claim.

In his Motion, Defendant argues that Sussmann has made false and misleading statements in his prior motions regarding every claim he asserts against Defendant. This Court has previously ruled on all such claims, save Plaintiff's trade dress infringement claim, and entertained Defendant's oppositions thereto. Accordingly, it need only address Defendant's arguments for dismissal of Plaintiff's remaining claim for trade dress infringement. In Plaintiffs' trade dress infringement claim, they argue that Defendant willfully copied the visual appearance of their websites, including the color, layout, and design elements.

Defendant asserts that this is false. He contends that his website was created long before his employment with Plaintiff ended and that it does not and never has copied the look and feel of any of Plaintiffs' websites. Essentially then, Defendant disputes the facts as they have been plead by Plaintiffs. Such an argument is inappropriate in a motion to dismiss. It is well-settled that in

deciding a motion to dismiss the court must accept the factual allegations of the plaintiff's complaint as true.[13] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[14] Accordingly, Plaintiffs' have adequately plead a trade dress infringement claim and any dispute of fact shall be resolved at the trial of that issue.

**B. Motions to Reconsider**

Defendant next asks this Court to reconsider both its Order and Reasons and its Judgment, granting Plaintiff injunctive relief on its claims under the CFAA, LUTPA, LUTSA, and for state law conversion. Plaintiffs complain that Defendant's Motions fail to identify an intervening change in law, the availability of new evidence, or a manifest injustice. The Fifth Circuit has, however, expressly stated that reconsideration of an interlocutory judgment such as the one at issue here does not require such an exacting standard.[15] In reconsidering an interlocutory judgment, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."[16]

Here, Defendant states that he believed that an order would not issue on Plaintiffs' summary judgment until he obtained access to file electronically and

---

[13] *Lormand*, 565 F.3d at 232.
[14] *Collins*, 224 F.3d at 498.
[15] *Austin*, 864 F.3d at 336.
[16] *Id.*

submitted additional proof in support of his opposition.[17] In light of this misunderstanding and Defendant's pro se status, this Court will reconsider its summary judgment holdings on each of Plaintiffs' claims in light of the additional information and argument submitted by Defendant in his Motion for Reconsideration and Motion to Vacate Judgment.

### A. CFAA

This Court previously held that Plaintiffs had carried their burden of showing that Defendant had violated the CFAA by (1) accessing Plaintiffs' computer network, internet, email, and telephone systems subsequent to his termination, (2) without authorization from Plaintiffs, and (3) for the purpose of stealing Plaintiffs' confidential information for his own personal gain. In his declaration, Plaintiff Sussmann stated that when Dragan returned his Leading Edge computers after his termination, they had been wiped and two were restored with outdated data. Sussmann claims that Dragan then refused to return Leading Edge's client lists and customer contact information. Data recovery software was unable to retrieve any of the missing information.

In addition, Sussmann stated that Dragan accessed Leading Edge's internet-based telephone system after his termination and redirected incoming calls to Financial Guards. Sussmann's technical consultant, Sheila Keller, confirmed in a declaration that Dragan had accessed Leading Edge's telephone system after he was terminated.

Sussmann also states that Dragan accessed Leading Edge's email marketing service after his termination and used it to email Leading Edge's

---

[17] Doc. 156.

customers with promotional materials directing them to contact Dragan. Plaintiffs attached a copy of the email, which advertised Leading Edge's insurance products but included contact information and website links to Financial Guards. Keller confirmed that Dragan had accessed Leading Edge's email marketing service using its credentials after his termination.

Keller further testified that a forensic analysis of Leading Edge's websites revealed that after Dragan was terminated he manipulated certain hyperlinks to redirect to his own website

Dragan now submits the following evidence in opposition to these claims. First, he relies on a perceived inconsistency between the declarations of David Hurley, who was hired by Plaintiffs to recover data from Defendant's computers, and a letter sent by Hurley to Sussmann. Both Hurley's declaration and letter, however, support a finding that Defendant's computers did not contain Plaintiffs' current information when they were returned to them. Indeed, both the declaration and letter state that at least one of Defendant's computers had been wiped and replaced with old data. Defendant does not submit any competent evidence to refute this point or support his version of events.

Second, Dragan submits the subpoenaed call log records from Plaintiffs' internet-based phone system, which he alleges show that no calls were forwarded to any of his numbers after April 15, 2015. Plaintiffs do not rebut this piece of evidence, and this Court finds that it creates a material issue of fact as to whether Defendant accessed Plaintiffs' internet-based telephone system after his termination and redirected incoming calls to himself as alleged.

Defendant reasserts his argument that he was not terminated on May 15, but rather, resigned on May 19. This time, however, he has submitted an affidavit attesting to such. The date of Defendant's separation from Leading Edge is relevant in light of the fact that Defendant is alleged to have accessed Leading Edge's email marketing service on May 18 and used it to email Leading Edge's customers with promotional materials directing them to contact Dragan. Defendant's affidavit contends that he was directed to send this email by Sussmann prior to his resignation. He contends that Sussmann instructed him to send the email to begin recruiting agents for his own team, which would operate under the umbrella of Leading Edge. This Court agrees that based on Defendant's affidavit, as well as several emails between Dragan and Sussmann in the record, there is an issue of fact regarding the date of Defendants' separation from the company and whether his access of Leading Edge's email service was unauthorized.

Accordingly, this Court's order granting Plaintiffs' CFAA claim regarding Defendant's destruction and retention of the data on Plaintffs' computers stands. However, the Court reverses its rulings regarding Plaintiffs' claims under the CFAA regarding Defendant's access to Plaintiffs' telephone and email systems. There are material issues of fact as to these claims, and they shall remain for trial.

### B. LUTPA

This Court next granted Plaintiffs' LUTPA claims, holding that Defendant's acts in using Plaintiffs' email service to send an email to Plaintiffs' customers directing them to call Defendant, redirecting Plaintiffs' website to Defendant's website, and manipulating Plaintiffs' telephone system all

constitute unfair or deceptive trade practices. For the reasons discussed above, this Court reverses its holding in regards to Plaintiffs' claims that Defendant accessed its email and telephone service to mislead Plaintiffs' clients.

As to Defendant's manipulation of certain hyperlinks on Plaintiffs' website, Keller attested that her analysis revealed that Defendant manipulated certain links on Plaintiffs' websites to redirect to Defendant's website, including the "term shopper" tool, after his termination. While Defendant's motion provides his own side of the story, he does not provide any evidence to support such. Accordingly, Defendant has not created a material issue of fact regarding this claim. The judgment entered on Plaintiffs' LUTPA claim regarding the manipulation of their website hyperlinks remains.

### C. LUTSA

This Court next granted Plaintiffs claim that Defendant converted for his benefit their proprietary information, such as: (1) client names, (2) financial information, (3) compensation plans, and (4) customer contacts. The Court based this holding on Sussmann's testimony that part of the Independent Contractor Agreement between Leading Edge and Dragan required Dragan to protect Leading Edge's confidential information, intellectual property, and trade secrets. Defendant has not submitted any additional evidence calling into question this holding, and it therefore stands.

### D. Conversion

Finally, this Court held that Defendant had converted Plaintiffs' confidential information, including customer lists and contact information. Defendant again fails to submit any compelling evidence or argument in opposition to this claim, save those arguments regarding the statements of

10

David Hurley, which were rejected above. Accordingly, the Court's grant of summary judgment on this claim stands.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED. Defendant's Motion for Reconsideration and Motion to Vacate Judgment are GRANTED IN PART.

The Court's prior order granting summary judgment on Plaintiffs' claims under the CFAA and LUTPA regarding Defendant's access of Plaintiffs' telephone and email systems is REVERSED, those claims are REINSTATED, and shall be decided at trial. Any judgment issued with regards to those claims is VACATED.

New Orleans, Louisiana this 7th day of December, 2017.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**